**In re BIG RAPIDS MALL ASSOCIATES, Debtor.**

**Geoffrey L. SILVERMAN and John D. Hertzberg, Plaintiffs–Appellants,**

v.

**MUTUAL TRUST LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 95–1549.

United States Court of Appeals, Sixth Circuit.

Argued May 13, 1996.

Decided Oct. 29, 1996.

Phillip J. Shefferly (argued), Thomas R. Morris (briefed), Shefferly & Silverman, West Bloomfield, MI, for Plaintiffs-Appellants.

Martin C. Wiseman, Bingham Farms, MI, for August Urbanek.

Thomas S. Leven, Farmington Hills, MI, for Roy McGlothin.

John R. Grant, Terry J. Mroz (argued and briefed), McShane & Bowie, Grand Rapids, MI, for Defendant-Appellee.

Before: NORRIS and DAUGHTREY, Circuit Judges; HILLMAN, District Judge*.

## I.

HILLMAN, District Judge.

The appellants, Geoffrey L. Silverman and John D. Hertzberg, appeal from the district court's order affirming the bankruptcy court's imposition of Fed. R. Bankr.P. 9011 sanctions against them in connection with their representation of a bankrupt West Michigan shopping mall. The bankruptcy order also imposed sanctions against the Big Rapids Mall Associates ("Debtor") and the Debtor's principals, August Urbanek and Roy McGlothin. This appeal, however, concerns only the imposition of sanctions against the attorneys ("Appellants"). For the reasons that follow, we reverse.

In the instant case, the Debtor owned and operated a shopping center located in Big Rapids, Michigan. Mutual Trust Life Insurance Company ("Mutual Trust") had a claim against the Debtor secured by a mortgage on the property. It had just completed a fore-closure of its mortgage, but was then stayed by the Debtor's Chapter 11 bankruptcy petition.

Mutual Trust, through a Stay Motion, sought relief from the automatic stay to permit its foreclosure sale to stand. Mutual Trust contended that the Debtor was not entitled to the protection of the automatic stay pursuant to 11 U.S.C. § 362 for the reasons that: (i) the Debtor was not a partnership under Michigan law; (ii) the property was not owned by the Debtor partnership; and (iii) an effective reorganization was not reasonably likely to occur within a reasonable period of time.

At the preliminary hearing on the Stay Motion, held on March 1, 1993, the bankruptcy court determined that the Debtor had established a "reasonable likelihood" of defeating the Stay Motion and was entitled to the continuing protection of the automatic stay pending a final hearing on the Stay Motion.

The final evidentiary hearing on the Stay Motion was held on March 24, 1993. At that hearing two issues were before the bankruptcy court: (1) was the case filed in good faith, and (2) was the property necessary for an effective reorganization? At the hearing, the Debtor offered both testimony and documentary evidence to establish its business status as a bona fide Michigan partnership. The Debtor's evidence included copies of United States partnership tax returns filed by the Debtor, evidence that the Debtor had its own tax identification number, and a variety of other exhibits which refer to the Debtor as a partnership. The court then took evidence from Mutual Trust which offered evidence that the Debtor was not in fact a partnership. The court also heard sworn testimony from the Debtor's principals.

Following the hearing, the bankruptcy court ruled that: (1) the Debtor was not a partnership; (2) there was no reasonable likelihood of a successful reorganization within a reasonable time; and (3) the Debtor filed the case in bad faith for the purpose of

---

* The Honorable Douglas W. Hillman, United States District Judge for the Western District of Michigan, sitting by designation.

improperly and abusively delaying and hindering the creditor. The bankruptcy court therefore annulled the automatic stay under Section 362(d)(2).

Thereafter, on June 24, 1993, Mutual Trust filed a motion for sanctions against the Debtor, the principals and their attorneys pursuant to Fed.R.Civ.P. 11. Although an evidentiary hearing was requested by the Debtor's attorneys, the request was denied by the bankruptcy judge. The judge, however, provided the attorneys an opportunity to respond by written brief and oral argument. On February 3, 1994, the bankruptcy court, applying Fed. R. Bankr.P. 9011, issued an opinion and order sanctioning the lawyers and their principals jointly and severally, ordering them to pay Mutual Trust the amount of $25,000. This order was affirmed by the district court and the lawyers timely appealed.

Appellants raise three arguments on appeal. First, they claim that they were improperly denied an evidentiary hearing on the Sanction Motion. Second, they assert the bankruptcy court erred as a matter of law in failing to make findings of fact or to state conclusions of law upon which sanctions could be ordered. Third, they contend that the record lacks evidence on which sanctions could be ordered under Rule 9011. As a result of these errors, appellants claim that the order of the district court affirming the bankruptcy court's sanction should be reversed.

## II.

■ Initially, appellants argue that the bankruptcy court erred in denying them an evidentiary hearing in order for them to set forth and explain their pre-filing investigation. The request for such a hearing was made in open court on September 15, 1994, and summarily denied. The bankruptcy judge ruled that appellants had been given proper notice of the Sanctions Hearing and an opportunity to respond. In addition, they were permitted oral argument and the right to file briefs. The court concluded by saying:

> no evidentiary hearing is required where an attorney is sanctioned for filing frivolous motions ungrounded in law or fact,

and where the judge imposing sanctions has participated in the proceedings.

Memorandum Opinion, February 15, 1994 (App. p. 23).

■ As the bankruptcy judge correctly reasoned, an evidentiary hearing is not always mandated before the imposition of sanctions. See INVST Financial Group, Inc. v. Chem–Nuclear Systems, Inc., 815 F.2d 391, 405 (6th Cir.), cert. denied, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987) (holding that due process will depend on the severity of the situation and of the sanction) (citing with approval Rodgers v. Lincoln Towing Service, Inc., 771 F.2d 194, 205–06 (7th Cir.1985) (finding hearing not necessary where district court participated in proceedings and sanctions were based on court's observation of counsel's conduct)); In re Kunstler, 914 F.2d 505, 521 (4th Cir.1990). A hearing is not necessarily required where the court has full knowledge of the facts and is familiar with the conduct of the attorneys. See, e.g., Kunstler, 914 F.2d at 521 (citing advisory note to pre–1993 Fed.R.Civ.P. 11).

The difficulty with applying this analysis to the instant case, however, is that the hearing on whether the petition was filed for improper purposes did not include evidence concerning specifically what the lawyers knew or did not know. Instead, the judge held the petition frivolous because he found the testimony of the principals unworthy of belief. The lawyers themselves never testified. Consequently, the hearing relied upon by the bankruptcy judge to sanction the lawyers never disclosed what the lawyers knew or didn't know prior to filing the petition. Indeed, at the time of the hearing on the Stay Motion no issue was raised involving appellants as parties. Appellants were never asked and never afforded the opportunity to state why they believe the petition to be "well-grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification or reversal or existing law." Fed. R. Bankr.P. 9011. See also Fed. R.Civ.P. 11. Nor was there any testimony of other witnesses relevant to that issue.

Since the hearing on the stay did not provide the bankruptcy judge with any explana-

tion of the conduct by the lawyers, a subsequent evidentiary hearing on the motions for sanctions might well have been the wisest course to follow. The judge, however, provided the attorneys an opportunity to be heard on the Sanction Motion by brief and oral argument. Although the bankruptcy judge's opinion denying an evidentiary hearing fails to mention the right of appellants to file affidavits and exhibits, nothing in his opinion indicates he would have refused to receive them. Further, appellants make no claim that proffered affidavits were rejected. Based on all the evidence submitted on this issue, we decline to hold that failure of the bankruptcy judge to grant appellants a full evidentiary hearing constitutes reversible error.

### III.

Federal Rule of Bankruptcy Procedure 9011 provides in pertinent part:

> The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose....

Fed. R. Bankr.P. 9011. The rule substantially tracks Federal Rule of Civil Procedure 11 before its 1993 amendment. *See* Fed. R. Bankr.P. 9011 Advisory Committee Note (1991).

■ In this circuit, the test for imposition of Rule 11 sanctions is whether the individual attorney's conduct was reasonable under the circumstances. *Hartleip v. McNeilab, Inc.,* 83 F.3d 767, 776 (6th Cir. 1996); *Century Products, Inc. v. Sutter,* 837 F.2d 247, 250–51 (6th Cir.1988). "[T]he relevant inquiry is whether a specific finding was, if not successful, at least well founded." *Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 553, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991). We grant the district court wide discretion to determine whether the conduct of plaintiff's

counsel was reasonable. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (discussing abuse of discretion standard for review of Fed.R.Civ.P. 11 sanctions decision); *Mid–Tech Consulting, Inc. v. Swendra,* 938 F.2d 885 (8th Cir.1991) (applying same abuse of discretion standard to Fed. R. Bankr.P. 9011 sanctions). A district court abuses its discretion if it bases its conclusion on an erroneous version of the law or on a clearly erroneous assessment of the evidence. *Cooter & Gell,* 496 U.S. at 405, 110 S.Ct. at 2460–61.

■ The district court, however, "is expected to avoid using the wisdom of hindsight and should test the signor's conduct by inquiring what was reasonable to believe at the time the pleading, motion or other paper was submitted." *Mann v. G & G Mfg., Inc.,* 900 F.2d 953, 958 (6th Cir.1990). The attorney's conduct must be tested by an objective standard of reasonableness. *See Century Products, Inc.,* 837 F.2d at 250–51 (citing Fed.R.Civ.P. 11 Advisory Note). The determination of whether an attorney conducted "reasonable inquiry" is judged by objective norms of what reasonable attorneys would have done. *Id.* That is, what was reasonable for the attorneys to believe at the time the bankruptcy petition was filed? This of course is a fact-oriented inquiry.

■ In determining whether an attorney had or had not conducted a reasonable inquiry, a court undoubtedly should consider a variety of pre-filing factors. In this case, for example, what information about the client's business did the attorneys have? Was the information verified? How involved had these attorneys been in their client's business? For how long? Were other professionals, such as accountants or bankers consulted? What independent investigation, if any, did the attorneys undertake prior to the filing? What did their clients tell them? Were they justified in believing what their clients told them? Did a time problem exist when a decision to file was made? What was the business (and legal) sophistication of the clients and the attorneys? These along with a myriad of other factual details would be crucial to have in hand before determining

whether the action taken or not taken by the attorneys prior to filing the bankruptcy petition was or was not reasonable.

In the present case, the bankruptcy court made no findings on any of these factors. The court merely stated that "misrepresentations" existed in various pleadings made to "improperly or abusively delay and hinder the creditor." Memorandum Opinion, Feb. 15, 1994, pp. 13–14 (App. pp. 28–29). However, the bankruptcy court did not identify these "misrepresentations" nor the pleadings containing them, and no facts in the record exist to reflect that appellants knew or should have known that there were any misrepresentations.

The bankruptcy court's findings of fact and conclusions of law with respect to appellants appear only in its summary conclusion that "a reasonable attorney with their experience would have known or should have known that an effective reorganization was not possible and that the underlying purpose of filing the petition was not to seek the protection that Chapter 11 was enacted to provide." Memorandum Opinion, Feb. 15, 1994, p. 14 (App. p. 29). The bankruptcy judge reached his conclusion that the principals had little or no credibility only after hearing the principals testify at the final hearing on the Stay Motion.

In reaching the conclusion that the Debtor was not a partnership, the bankruptcy court conceded that "the facts in this case suggest a number of factors supporting the debtor's position that it is a partnership, but that other evidence weighed against that conclusion." (Tr. 3/26–93 at 12) For example, the bankruptcy court observed that the jointly owned property was held for profit as opposed to some other purpose and that the profits were shared pro rata according to ownership interest. The court noted that this factor would constitute prima facie evidence of a partnership under Mich. Comp. L. Ann. § 449.7(4). The court also noted that some of the leases were entered into using the word "partner" and that the U.C.C. filing uses the name of "Big Rapids Mall Associates."

The bankruptcy court observed that in determining whether or not a partnership existed required that substantial weight must be given to the intention of the Debtor's principals: "As noted earlier, this intent issue of course is the critical issue, and to the extent this testimony is found critical, it is potentially controlling." The principals testified that they intended to operate the Debtor's business as a partnership. The bankruptcy judge, however, did not believe them. The bankruptcy judge stated: "In the end, in evaluating the demeanor and credibility of Mr. Urbanek and Mr. McGlothin, the court found that their testimony—that they have always intended this to be a partnership— simply lacked credibility."

In other words, by the court's own analysis, the petition was not wholly without support and a credible argument could be made that under Michigan law a partnership existed. But, in ruling against the existence of a partnership, the court concluded that it did not believe the principals when they testified they had intended to operate as a partnership. Similarly, on the question of whether or not there was a reasonable opportunity for an effective reorganization, the court stated that a number of reorganization techniques were available to these debtors. The court observed that the debtor had been successfully operating for many years and that the annual rents owed exceeded expenses by $90,000. The owners testified that they expected shortly to receive a substantial judgment against Carter's, a major mall tenant, for back rent. They testified that a court already had determined that Carter's had breached its lease and that proceedings on the question of damages was set for June. They testified that, upon getting occupancy of the premises, they expected to be able to market the Carter's space successfully. The court, however, again found the testimony of the Debtor's principals not to be credible and did not accept Mr. Urbanek's or Mr. McGlothin's word that a successful reorganization was in prospect. The bankruptcy court found the principals' testimony to be discredited by a letter offering settlement of the Carter's matter which appeared to be inconsistent with Mr. McGlothin's testimony. The court also reasoned that any judgment on the Carter's lease could be delayed be-

yond the parties' expectations, preventing the reorganization from being reasonably "in prospect" for purposes of the statute. Further, the bankruptcy court found Mr. McGlothin's testimony to be afflicted with "a rigid and inflexible attitude in pursuing the one course of reorganization that is guaranteed to take the longest."

Once again, on the court's own analysis, although certain business factors supported the prospect of a successful reorganization, the bankruptcy judge found that the Debtor's principals were making insufficient efforts for the court to fairly conclude that reorganization was reasonably likely.

We have no quarrel with the bankruptcy judge's credibility findings concerning the principals. They were sanctioned and no appeal was taken. However, it is not sanctions against the principals that is before the court; rather, it is the conduct of the lawyers. The bankruptcy judge's findings concerning the truthfulness of the principals gives no guidance why the bankruptcy court imposed sanctions on the attorneys. If the bankruptcy court concluded that the attorneys knew or should have known that their client's principals were not truthful but nevertheless proceeded as the client wished, then the bankruptcy court should have spelled out those facts. If it had no such facts, the court's conclusion that the petition was not well-grounded in fact or warranted by existing law is at odds with the court's finding at the preliminary hearing that the Debtor had established a "reasonable likelihood" that it would prevail against Mutual Trust's attempt to gain relief from the automatic stay. It also is at odds with the court's findings after the stay hearing that there were facts to support the existence of the partnership and that reorganization possibilities existed.

▮▮▮ In the instant case, the bankruptcy court concluded that "the attorneys and clients shared responsibility for the litigation strategy," Memorandum Opinion, Feb. 15, 1994, p. 14 (App. p. 29), and it imposed sanctions on not only the Debtor, but also on both of its principals and both of the appellants, jointly and severally. The court made no finding that appellants knew or should

have known before filing the bankruptcy petition that their clients would lack credibility in court. Likewise, there are no facts to support a conclusion of "shared responsibility." "The sanctioning of a party requires specific findings that the party being sanctioned was aware of the wrongdoing.... In the instant case, the trial court appears to have assessed joint and several liability without considering relative fault." *White v. General Motors Corp., Inc.,* 908 F.2d 675, 686 (10th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). Without any findings to support the imposition of sanctions on appellants, the bankruptcy ruling amounts to vicarious liability on the part of appellants for the perceived unreliability of their clients' testimony.

▮▮▮ The lack of credibility of the Debtor's principals, while a basis for sanctions against the principals cannot, without more, serve as a basis for an award of sanctions against appellants. *Healey v. Chelsea Resources, Ltd.,* 947 F.2d 611, 626 (2d Cir.1991) (holding that the court may not properly award Rule 11 sanctions solely because client's testimony was not credible unless (a) it was incredible as a matter of law, and (b) the attorney filed a post-trial memorandum espousing his client's position); *Mar Oil, S.A. v. Morrissey,* 982 F.2d 830, 844 (2d Cir.1993) (stating that unfavorable credibility assessment is rarely a basis for an award of sanctions against the attorney). Absent some further evidence of attorney fault, a lawyer cannot be sanctioned because a judge at some later date believes his client lacks credibility or is even lying under oath. It is surely obvious to any judge (as it is to any lawyer) that it is possible for an attorney to make an assessment of a client's credibility in the attorney's office which ultimately may differ substantially from the court's assessment of the same individual under oath at trial. It is true of course that today, under Rule 11, situations may exist where an attorney has an affirmative obligation to investigate facts supporting a client's representation. See *Blue v. United States Dep't of the Army,* 914 F.2d 525, 542 (4th Cir.1990). Nevertheless the advice given over 200 years ago by Samuel Johnson (1709–1784), the re-

nowned English lexicographer and conversationalist, remains equally valid today:

Sir, you do not know the cause to be good or bad until the Judge determines it ... An argument which does not convince yourself may convince the Judge to whom you argue it: and if it does convince him, why Sir, then you are wrong and he is right. It is his business to judge; and you are not to be confident in your opinion that a cause is bad but to say all that you can for your client, and then hear the Judge's opinion.

### IV.

Since the record fails to disclose any facts to establish that the attorneys failed to act reasonably under the circumstances of this case as required by Rule 9011, we REVERSE the decisions of the lower courts and hold that the imposition of sanctions against appellants was an abuse of discretion.