*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0102p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

NORMA LEE,

        *Plaintiff-Appellee,*

    *v.*

JAVITCH, BLOCK & RATHBONE LLP,

        *Defendant-Appellant,*

UNITED STATES OF AMERICA,

        *Intervenor.*

No. 08-4485

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 06-00585—Sandra S. Beckwith, District Judge.

Argued: October 15, 2009

Decided and Filed: April 13, 2010

Before: MARTIN, ROGERS, and COOK, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Michael D. Slodov, JAVITCH, BLOCK & RATHBONE LLP, Cleveland, Ohio, for Appellant. Stephen R. Felson, LAW OFFICE, Cincinnati, Ohio, for Appellee. Howard S. Scher, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor. **ON BRIEF:** Michael D. Slodov, JAVITCH, BLOCK & RATHBONE LLP, Cleveland, Ohio, for Appellant. Stephen R. Felson, LAW OFFICE, Cincinnati, Ohio, Steven C. Shane, STEVEN C. SHANE, ATTORNEY AT LAW, Bellevue, Kentucky, for Appellee. Howard S. Scher, Michael S. Raab, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor.

_____

## OPINION

_____

ROGERS, Circuit Judge. Javitch, Block & Rathbone (JB&R) represented a client who attempted to collect a credit card debt from Norma Lee. After obtaining a

1

default judgment in state court against Lee, JB&R attorney Victor Javitch filed for a non-wage garnishment of Lee's bank account. To do so, Javitch signed and filed a required affidavit stating that he had a "reasonable basis to believe that [Lee's Bank] may have property, other than personal earnings, of [Lee] that is not exempt under the laws of this state or the United States." The state court initially garnished the money from Lee's bank accounts, but the court later returned the money after Lee proved that the account contained only Social Security disability payments, which are exempt funds. Lee then sued JB&R, contending that Javitch did not have the reasonable basis claimed in the affidavit, and thus that his signing and filing of the affidavit violated the Fair Debt Collection Practices Act and the Ohio Consumer Sales Practices Act. Because Lee did not establish at trial that reasonableness demanded any additional investigation of Lee's bank accounts, she did not prove that Javitch's affidavit was false. Lee is therefore not entitled to relief.

JB&R represented Midland Funding, LLC (Midland) in its attempts to collect a $2,795.75 credit card debt originally owed on an Aspire Visa. In February, 2006, Midland provided information to JB&R indicating that the debt was owed by Norma Lee and that Lee resided on Birchridge Drive in Cincinnati, Ohio. On February 16, JB&R sent a validation notice as required by 15 U.S.C. § 1692g(a) to the Birchridge Drive address, but JB&R did not receive any response. Before February 16, Lee had moved from Birchridge Drive to Landis Lane, but JB&R did not have notice of her move. In February and early March, JB&R Recovery Specialist Frank Stefanelli assessed whether the debt was collectible. Following JB&R procedures, Stefanelli determined the following: First, Lee was below retirement age, so it was less likely that she was receiving Social Security retirement payments. Second, the zip code containing the Birchridge Drive address had a median income of $43,588, so it was more likely that Lee would be capable of repaying the debt. Third, Lee was not listed as a property owner in the county containing the Birchridge Drive address. Fourth, Lee's credit report listed no medical debts, which might have been an indication that Lee was receiving disability payments, and the report neither indicated that the Midland debt was disputed nor contained any suggestions that Lee had been the victim of identity theft. Additionally,

JB&R called Lee multiple times during this period, but she neither answered the phone nor returned JB&R's voice mails. Lee testified at trial that she had never received any of these calls. Stefanelli concluded that this information indicated that the debt was collectible, and on March 8, he recommended to his superiors that JB&R file a collections suit against Lee. JB&R filed suit against Lee on April 11, 2006, in Ohio municipal court and obtained a default judgment for $2,795.75. On July 12, JB&R filed for a non-wage garnishment of Lee's bank account in the same Ohio municipal court. Attached to the filing was an affidavit, signed by JB&R attorney Victor Javitch, which stated,

> The affiant has a reasonable basis to believe that the person named in the affidavit as the garnishee may have property, other than personal earnings, of the judgment debtor that is not exempt under the laws of this state or the United States. The property is described as money, property or credits.

This affidavit was required by the then-current version of Ohio Revised Code § 2716.11 to file for a non-wage garnishment.[1] Javitch had not conducted any investigation into Lee's account before signing the affidavit; instead, he had relied on the investigation done by JB&R staff. Javitch testified at trial that on some days he might sign as many as thirty or forty non-wage garnishment affidavits of this type. On July 17, the state court issued an order of garnishment to Lee's bank. The bank debited a total of $493.22 from Lee's checking and savings accounts and remitted that amount to the court on July 18.

Lee was notified of the garnishment by letter from her bank. She did not recognize the name of the creditor, Midland, and she was surprised because she had not received any written notice of the debt at the Landis Lane address. At the time, Lee's only source of income was Social Security disability payments, which she received because complications from breast cancer surgery had greatly reduced the functionality of one of her arms. The garnishment of all of the money in her bank accounts resulted

---

[1]The statute has since been amended to omit the "reasonable basis" requirement. *See* Ohio Rev. Code § 2716.11.

in the bouncing of some of Lee's checks. Lee testified at trial that she had been assessed $195.26 in fees because of the bounced checks. Lee's inability to access her bank accounts also increased her stress levels and adversely affected her health by, among other things, exacerbating her diabetes and leading to a bladder infection. Lee did not have access to any funds until August 10, when the money from her bank accounts was restored after the state court determined that all of the money in her accounts had been received as Social Security disability payments.

Lee sued JB&R in federal court on September 5, 2006, alleging that JB&R had violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692e & 1692f, and the Ohio Consumer Sales Practices Act (OCSPA), Ohio Rev. Code §§ 1345.02 & 1345.03, by filing an affidavit that was false. Specifically, Lee alleged that Javitch did not have the reasonable basis alleged in his affidavit when he signed that document. After denying cross-motions for summary judgment, the district court held a five-day jury trial between January 15 and 24, 2008. A jury determined that, when Javitch signed the affidavit, he did not have "a reasonable basis to believe that Plaintiff's bank account may have contained funds, other than personal earnings, that were not legally exempted from garnishment"; that the signing of the affidavit therefore violated the FDCPA and the OSCPA; and that Lee was entitled to $49,603 in damages. The district court denied JB&R's renewed motion for judgment as a matter of law. Post-trial motions reduced the damage award to $35,595.26, but the district court also awarded Lee attorneys' fees of $125,315.30. JB&R now appeals, arguing primarily that the affidavit was true and thus that Lee is not entitled to relief under either the FDCPA or the OSCPA.

In the particular circumstances of this case, the dispositive question is whether, as a matter of Ohio law, Javitch had a reasonable basis to believe that Lee's bank account may have contained funds, other than personal earnings, that were not legally exempted from garnishment. Indeed, under the district court's instructions to the jury,

if Javitch signed the affidavit with a reasonable basis to believe that Lee's account may have contained nonexempt funds, judgment would be entirely for the defendants.[2]

We are loath to overturn a jury verdict regarding whether conduct is reasonable, and will reverse such a verdict "only if in viewing the evidence in the light most favorable to the non-moving party, . . . reasonable minds could come to but one conclusion, in favor of the moving party." *Ford v. County of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (quoting *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003)). Even applying that standard, however, reasonable minds could only come to the conclusion that Javitch had a reasonable basis to believe that Lee's bank account may have contained funds, other than personal earnings, that were not legally exempted from garnishment. The standard imposed by the former Ohio Revised Code § 2716.11 requires only that the signing attorney conduct a reasonable investigation. Any conclusion that Javitch's investigation was unreasonable therefore requires a conclusion that additional investigation was possible and, under the circumstances, compelled by that reasonableness standard.[3] Lee argues on appeal, as her counsel argued before the jury, only one additional investigative step that Javitch could have taken: subpoenaing Lee's bank records from her bank.[4] At trial, there was conflicting testimony regarding

---

[2]This is because JB&R did not violate either the FDCPA or the OSCPA if the affidavit signed by Javitch was true, and the contested part of the affidavit stated that Javitch had a "reasonable basis to believe that [Lee's Bank] may have property, other than personal earnings, of [Lee] that is not exempt under the laws of this state or the United States." JB&R cannot be held liable for filing an affidavit with language required by Ohio law, so long as the affidavit was not false. Such a truthful affidavit is neither a "false, deceptive, or misleading representation" in violation of 15 U.S.C. § 1692e nor an "unfair or unconscionable means" in violation of 15 U.S.C. § 1692f. Filing a truthful affidavit is similarly neither an "unfair or deceptive act or practice" in violation of Ohio Rev. Code § 1345.02 nor an "unconscionable act" in violation of Ohio Rev. Code § 1345.03.

[3]The testimony at trial indicated that there were only four ways to collect information relevant to the contents of a debtor's bank account. JB&R attempted to use three of these ways: talking to the debtor, examining public records, and ordering a credit report. At trial, the discussion of the fourth method—post-judgment discovery—focused on subpoenaing bank records, and this opinion mirrors that focus. Trial testimony also stated that discovery could be served directly to the debtor, but that this form of discovery was ineffective because debtors typically did not respond. JB&R's expert testified that 1-2% of all debtors responded to post-judgment discovery and that the response rate was even lower among those debtors who, like Lee, had not returned phone calls. The expert's firm had abandoned the service of discovery directly upon debtors because of these low response rates.

[4]At oral argument, Lee also suggested that the jury may have concluded that JB&R never called Lee, and thus that their investigation was unreasonable on this ground as well. The trial testimony does not support this inference. JB&R introduced business records showing that they had placed more than fifty calls to a number Lee admitted was her phone number during the relevant period. JB&R records also

whether subpoenaing Lee's bank records would have been legally possible. Lee called no witnesses on this question. JB&R expert Randy Slovin testified that, while he was not certain, he believed that it would be possible to subpoena bank records prior to a non-wage garnishment. He testified that it was unclear under current Ohio case law whether such subpoenas were legally allowable, and he noted that many law firms believed that such subpoenas were not allowable. Slovin also stated that, in his twenty-four years of practicing law, he had never heard anyone even suggest using a subpoena to obtain bank records in the context of filing for a non-wage garnishment. Javitch testified at trial that he did not believe that JB&R had the legal ability to subpoena Lee's bank records. Javitch, who was at the time of trial in his forty-sixth year of practicing law, also testified that he had never seen a subpoena issued to a bank prior to a non-wage garnishment, nor had he heard anyone even suggest that such a subpoena was necessary before a non-wage garnishment could be issued. JB&R attorney James Rathbone stated that, in his twenty-eight years of legal experience, he had never heard anyone suggest that subpoenaing bank records was necessary before filing for a non-wage garnishment order.

Given the unanimous testimony that issuing a bank subpoena in the context of filing for a non-wage garnishment was of uncertain legality and the absence of evidence that it had ever been done previously, reasonableness did not demand that Javitch issue such a subpoena before signing the affidavit. Ohio tort law defines negligence as the failure to conduct oneself as would "a reasonably prudent man in like circumstances;" and excludes from the definition of negligence "failing to take extraordinary measures which hindsight demonstrates would have been helpful." *See Bender v. First Church of the Nazarene*, 571 N.E.2d 475, 477 (Ohio Ct. App. 1989) (citation omitted). Reasonableness thus demands ordinary rather than extraordinary efforts, and establishing a reasonable basis to believe a given fact does not demand unprecedented investigation in a common situation. Similar standards prevail under Federal Rule of Civil

---

showed that the firm had left Lee a number of voice mail messages. Lee's response was not to dispute that the calls had taken place, but she instead testified that she had not received the calls and that she had not checked her voice mailbox.

Procedure 11, which contains a reasonable inquiry requirement analogous to the "reasonable basis" requirement imposed by the former Ohio Revised Code § 2716.11. This court has held that "[t]he determination of whether an attorney conducted 'reasonable inquiry' is judged by objective norms of what reasonable attorneys would have done." *Silverman v. Mut. Trust Life Ins. Co. (*In re *Big Rapids Mall Assocs.)*, 98 F.3d 926, 930 (6th Cir. 1996).[5] The evidence does not support a conclusion that reasonable attorneys would have subpoenaed Lee's bank records, as there was no evidence that any attorney, reasonable or unreasonable, had ever issued a subpoena in an analogous situation. Thus, because Lee did not establish that a reasonable attorney would have conducted additional investigation, JB&R was entitled to judgment as a matter of law.

This conclusion is consistent with the text of former Ohio Revised Code § 2716.11. That provision required only that the affiant have "a reasonable basis to believe" that Lee's bank "may have" nonexempt property of Lee's. The "may have" language indicates that this requirement was not meant to require that the signing attorney have specific evidence about whether the property at issue was exempt with respect to every exemption provided by Ohio or federal law. Rather, the requirement must be that the attorney seeking the garnishment must investigate reasonably available information and ensure that none of that information includes a clear suggestion that the debtor's bank account contains exempt funds. This was the general procedure followed by JB&R, and the only question presented by Lee was whether subpoenaed bank records fell within the category of reasonably available information. In light of the testimony that such subpoenas were not clearly legal, and absent any testimony that anyone had ever issued such a subpoena in a similar circumstance, reasonableness did not demand that Javitch subpoena Lee's records before signing the affidavit. The only reasonable conclusion is that the affidavit was true.

---

[5]*Silverman* concerned Federal Rule of Bankruptcy Procedure 9011. *Silverman*, 98 F.3d at 930. Because of the similarity of Bankruptcy Procedure Rule 9011 and Civil Procedure Rule 11, *Silverman* applied this circuit's Rule 11 jurisprudence. *Id.*

For these reasons, we **REVERSE** the judgment of the district court and **REMAND** this case for further proceedings consistent with this opinion.