NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0176n.06

No. 21-1366

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| NICOLE THOMPSON, | ) | **FILED** |
| Plaintiff-Appellee, | ) | Apr 28, 2022 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| SCOTT ANDREW RENNER, *et al*, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellants. | ) | |
| | ) | |
| | ) | |

Before:  BATCHELDER, ROGERS, and WHITE, Circuit Judges.

WHITE, J., delivered the opinion of the court in which ROGERS, J., joined. BATCHELDER, J. (pp. 26–32), delivered a separate dissenting opinion.

**HELENE N. WHITE, Circuit Judge.**  Defendant-Appellants Scott A. Renner and Velo Associates, PLC ("Velo/Renner") appeal the district court's grant of summary judgment against them in this action filed under the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  On appeal, Velo/Renner argue that the district court erred in concluding that their filing a request for garnishment on an out-of-state garnishee, with no reason to believe that there was personal jurisdiction over the garnishee or that the garnishee would consent to jurisdiction, violated the FDCPA.  They also argue that the district court abused its discretion in awarding actual and statutory damages.  We disagree and affirm.

## I.

## A.

On April 11, 2013, St. Mary's Hospital ("St. Mary's") obtained a default judgment against Plaintiff-Appellee Nicole Thompson for an alleged medical debt. Sometime later, St. Mary's retained lawyers Velo/Renner to represent it in collecting its debt from Thompson.[1] On January 15, 2019, Velo/Renner filed a request for periodic garnishment ("Request for Garnishment" or "Request") on St. Mary's behalf in Michigan's 61st District Court directed to Thompson's employer, Ingalls Memorial Hospital ("Ingalls"). Ingalls is located in Illinois. The Request stated that Thompson owed St. Mary's an unsatisfied judgment of $1,149.70. A Velo/Renner agent signed the Request. In a section entitled "TO THE GARNISHEE," the Request instructed garnishee Ingalls that it should "not pay any obligations to [St. Mary's] unless allowed by statute or court rule." R. 36-1, PID 110.

On March 14, 2019, the 61st District Court issued the requested writ of garnishment (the "Writ of Garnishment" or "Writ") ordering that Ingalls garnish Thompson's wages to satisfy her debt. St. Mary's, through Velo/Renner, served Ingalls with a copy of the Writ and accompanying garnishee disclosures, interrogatories, and fee. Ingalls, through its agent MedCentrix, Inc., provided Velo/Renner with the completed forms and responses to St. Mary's interrogatories. However, Ingalls did not withhold any funds from Thompson's wages or release any funds to St. Mary's.

Thompson filed a timely objection to the Writ of Garnishment in the 61st District Court, arguing that "the [W]rit was not properly issued or is otherwise invalid" because, under MCL

---

[1] The parties agree that, within the meaning of the FDCPA, Thompson is a "consumer" and "person," Velo/Renner are "debt collectors," and the alleged debt to St. Mary's is a "debt."

§ 600.4011, "[t]his [Michigan] Court does not have jurisdiction over the Illinois garnishee." *See* R. 36, PID 107; R. 36-4, PID 118.

The 61st District Court held a hearing on Thompson's objection. Concluding that St. Mary's had not demonstrated that the court could exercise personal jurisdiction over Ingalls, the 61st District Court sustained Thompson's objection and released the Writ of Garnishment.

St. Mary's appealed the 61st District Court's order to the Kent County Circuit Court ("Circuit Court"), which affirmed. The Circuit Court explained that Michigan courts may exercise garnishment jurisdiction only "in accordance with the Michigan Court Rules" and only over third parties and obligors if those entities are "subject to the judicial jurisdiction of the state." R. 36-6, PID 125 (first quoting *Nationsbanc Mtg. Corp. of Ga. v. Luptak*, 625 N.W.2d 385, 387 (Mich. Ct. App. 2000); and then citing MCL § 600.4011). The court explained that there are three methods by which a plaintiff may demonstrate a Michigan court's proper exercise of personal jurisdiction over a corporation:

(1) Incorporation under the laws of [Michigan];

(2) Consent, to the extent authorized by the consent and subject to the limitations provided in [MCL § 600.]745; and

(3) The carrying on of a continuous and systematic part of its general business within the state.

*Id.* at 124–25 (first citing *Oberlies v. Searchmont Resort, Inc.*, 633 N.W.2d 408, 411 (Mich. Ct. App. 2001); and then citing MCL § 600.711). The court noted that it was "undisputed that Ingalls is not incorporated in the state of Michigan, nor does it carry on a continuous and systematic part of its general business within the state." *Id.* The court then explained why, contrary to St. Mary's argument, it would not find that Ingalls's disclosures and responses to the Writ constituted "consent" to personal jurisdiction pursuant to MCL § 600.711(2):

St. Mary's has not specifically pled, nor has it introduced evidence, in support of its proposition that Ingalls consented to personal jurisdiction.

MCR [Michigan Court Rule] 3.101(L)(4) is persuasive. MCR 3.101(L)(4) states:

> *The filing of* a disclosure, the filing of answers to interrogatories, or *the personal appearance by or on behalf of the garnishee at a deposition does not waive the garnishee's right to question the court's jurisdiction*, the validity of the proceeding, or the plaintiff's right to judgment.

(emphasis added). Per court rule, Ingalls' actions—compliance with the writ, filing of a disclosure, the filing of answers to interrogatories, or even personal appearances if such occurred—*do not waive* a judicial jurisdictional issue.

While waiver and consent hold different meanings, in this matter they are practically the same. St. Mary's has failed to meet its burden to show the court has personal jurisdiction over Ingalls. All it has done is identify that Ingalls did not waive a potential jurisdictional issue. Without more—such as a formal written consent or some other affirmative actions by Ingalls—the court cannot find that Ingalls consented to the district court's jurisdiction. Therefore, the district court lacked judicial jurisdiction over Ingalls, as provided in MCL 600.4011.

*Id.* at 126. The court then concluded that lack of jurisdiction was a valid basis for Thompson's objection to the garnishment and affirmed the 61st District's release of the Writ.

**B.**

After the state court released the Writ, Thompson sued Velo/Renner in federal court alleging that they had violated the Fair Debt Collection Practices Act by "fil[ing] a post judgment garnishment against [Thompson]'s Illinois employer in a Michigan collection lawsuit when the Michigan court did not have jurisdiction over the Illinois employer."[2] R. 1. Thompson argued that Velo/Renner's allegedly jurisdictionless Garnishment Request violated the FDCPA's prohibition on "the use of any false, misleading, or deceptive representation or means in connection with the collection of a debt, including the threat to take any action that cannot legally

---

[2] Thompson also alleged that Velo/Renner's conduct violated the Michigan Collection Practices Act, MCL § 445.251 *et seq*, but the district court declined to exercise supplemental jurisdiction over this claim. It is not before us.

be taken." *Id.* at 3 (citing 15 U.S.C. § 1692(e)). In Thompson's view, Velo/Renner's Garnishment Request constituted a "threat to take any action that cannot legally be taken" because, at the time Velo/Renner filed the Request in the 61st District, they could not demonstrate that the Michigan court had personal jurisdiction over Thompson's Illinois employer.

The district court agreed that Velo/Renner's Garnishment Request violated the FDCPA's prohibition on threats to "take action that cannot legally be taken" and awarded Thompson $2,720 in actual damages, $500 in statutory damages, and $18,875 in costs and attorney fees, for a total award of $22,095.

Velo/Renner appeal on two grounds: first, they argue that the district court erred in concluding that their Garnishment Request violated the FDCPA because it did not contain any affirmative representations regarding jurisdiction; because a jurisdictional error is not "actionable" under the FDCPA; and because the FDCPA is an improper mechanism to vindicate violations of state procedural law; and second, that the district court abused its discretion in awarding Thompson damages "absent credible evidence" that she had sustained those damages and absent proper "analysis of the relevant factors" under 15 U.S.C. § 1692(k). Appellants' Br. at viii.

## II.

### A.

We review the grant of summary judgment de novo and "make all reasonable inferences in [the non-movant's] favor." *Brent v. Wayne Cnty. Dept. of Human Servs.*, 901 F.3d 656, 681 (6th Cir. 2018). Summary judgment is appropriate if a movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a).

The FDCPA's self-stated purpose is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not completely disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To that end, the FDCPA prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." *Id.* § 1692e(5). The Act is "extraordinarily broad." *Currier v. First Resol. Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014) (quoting *Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008)). It is a "strict-liability statute: A plaintiff does not need to prove knowledge or intent and does not have to have suffered actual damages" to prove a violation. *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448–49 (6th Cir. 2014) (internal citation omitted). "To determine whether conduct fits within the broad scope of the FDCPA, the conduct is viewed through the eyes of the least sophisticated consumer." *Currier*, 762 F.3d at 533 (internal quotation omitted). "This standard ensures that the FDCPA protects all consumers, the gullible as well as the shrewd." *Barany-Snyder*, 539 F.3d at 333 (internal citations omitted).

**B.**

Velo/Renner make two arguments why their Garnishment Request did not violate the FDCPA. First, they argue that the Request did not contain "any affirmative representations" as to jurisdiction, and that simply filing the Request cannot be a violation of the FDCPA's prohibition on misleading representations. Appellants' Br. at 14–15. Second, Velo/Renner argue that even if a court later determined that they were mistaken regarding jurisdiction at the time of filing, this mistake is not "actionable" under the FDCPA because the allegation regarding jurisdiction was

not necessarily false at the time it was made given the possibility that grounds for jurisdiction could be found after discovery or that Ingalls would later consent to jurisdiction. *Id.* at 17–20. These arguments lack merit.

**1.**

As an initial matter, Velo/Renner are incorrect that their signature on the Garnishment Request was not an "affirmative representation" as to jurisdiction. Michigan courts have jurisdiction over garnishees "only in accordance with the Michigan Court Rules." MCL § 600.4011(2). And MCR 1.109(E)(5)—a provision analogous to Federal Rule of Civil Procedure 11—provides that a signature on a filed document constitutes a "certification by the signer that . . . to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." Thus, as the district court aptly observed, "by filing . . . the garnishment, the Plaintiff in the underlying action impliedly makes the factual contention that jurisdiction over the garnishee is a reasonable opportunity available to them." R. 51, PID 233.

But even without state-specific rules regarding affirmative representations, filing a garnishment request without reasonable belief that the court has jurisdiction to grant it may be sufficient to violate the FDCPA. "Court filings can be a threat under the FDCPA. . . . The fact that the threat appears in a lawsuit or other court filing does not diminish the threatening nature of the communication for purposes of the FDCPA." *Currier*, 762 F.3d at 535; *see also Stratton*, 770 F.3d at 450 (noting that a garnishment request is litigation in pursuit of a debt and is therefore regulated by the FDCPA). It is well-established that taking, or threatening to take, an action impermissible under state law may be sufficient to violate the FDCPA. *Stratton*, 770 F.3d at 445 ("Under

Kentucky law a party has no right to statutory interest if it has waived the right to collect contractual interest. And any attempt to collect statutory interest when it is 'not permitted by law' violates the FDCPA."); *Currier*, 762 F.3d at 535–36 (concluding that filing a judgment lien against a debtor's home that was invalid under Kentucky law is "a threat to take an action that cannot legally be taken" because of "the intimidating effect on the least sophisticated consumer: that she would be confused, and reasonably might feel pressured to immediately pay the debt, even if she disputed its validity in order to avoid the implied consequences of the lien") (internal quotation marks omitted). Thus, filing a garnishment request without reasonable grounds for jurisdiction may be sufficient to violate the FDCPA's prohibition on "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt" because it constitutes "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).

Velo/Renner point to this court's statement in *Currier* that Congress did not intend to "turn every violation of state law into a violation of the FDCPA." Appellants' Br. at 13 (quoting *Currier*, 762 F.3d at 537). True. But in concluding that debt collectors violated the FDCPA by filing a judgment lien on a debtor's home that was invalid under state law, *Currier* went on to explain:

> [While] Congress did not turn every violation of state law into a violation of the FDCPA[,] . . . that does not mean that a violation of state law can never *also* be a violation of the FDCPA. The proper question in the context of an FDCPA claim is whether the plaintiff alleged an action that falls within the broad range of conduct prohibited by the Act. The legality of the action taken under state law may be relevant, as it is in this case. If the judgment lien [filed against the debtor's home] had been valid under state law for the month that [the debt collector] held it, we could not say that it was an unfair debt collection practice even though it was coercive in nature. *But the same action becomes unfair [within the meaning of the FDCPA] when accomplished by using a state mechanism that does not authorize it.*

762 F.3d at 537 (internal citation omitted) (emphasis added).

Thus, even without regard to whether Velo/Renner made "affirmative misrepresentations" in their Garnishment Request, the Garnishment Request could itself be "an action . . . accomplished by using a state mechanism that does not authorize it." *Id.* Or put in the FDCPA's own terms, filing the Garnishment Request could constitute a "threat to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5).

**2.**

**a.**

Having concluded that it is possible to violate the FDCPA's prohibition on toothless threats by filing a jurisdictionless garnishment request, the next question is whether Velo/Renner's garnishment request was, in fact, a "threat to take any action that cannot legally be taken." § 1692e(5). Velo/Renner argue that the issue of jurisdiction was, at worst, an open question at the time of filing, which did not render their Request a "false," "misleading," "deceptive," or otherwise impermissible filing under Michigan law.

As the 61st District Court explained in the underlying state case, MCL § 600.4011 limits the state courts' garnishment authority as follows:

> [A Michigan] court has power by garnishment to apply the following property or obligation, or both, to the satisfaction of a claim evidenced by contract, judgment of this state, or foreign judgment, whether or not the state has jurisdiction over the person against whom the claim is asserted:
>
> > (a) personal property belonging to the person against whom the claim is asserted but which is in the possession or control of a third person *if the third person is subject to the judicial jurisdiction of the state* and the personal property to be applied is within the boundaries of this state.
> >
> > (b) an obligation owed to the person against whom the claim is asserted *if the obligor is subject to the judicial jurisdiction of the state*.

*Id.* § 600.4011(1) (emphasis added). As plaintiffs in the garnishment action, Velo/Renner bore the burden of establishing jurisdiction over the obligor/garnishee. *See Oberlies*, 633 N.W.2d at 411.

A Michigan court has personal jurisdiction over a corporation that stands in any one of the following three relationships with the state:

> (1) Incorporation under the laws of [Michigan].
>
> (2) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745.
>
> (3) The carrying on of a continuous and systematic part of its general business within [Michigan].

MCL § 600.711. The state court noted in the underlying proceedings that "[i]t is undisputed that Ingalls is not incorporated in the state of Michigan."[3]    R. 36-6, PID 125.  Velo/Renner have not challenged this fact in these proceedings.  Thus, the only possible avenues for jurisdiction when Velo/Renner filed the Garnishment Request were either that 1) Ingalls would consent—or had already consented—to Michigan's jurisdiction; or that 2) Ingalls carried on a "continuous and systematic part of its general business within" Michigan under MCL § 600.711.

A foreign corporation may consent to personal jurisdiction in Michigan by "agree[ing] in writing that an action on a controversy may be brought in [Michigan]," provided certain conditions are met. *Id.* § 600.745(2)(a)–(d).  Velo/Renner do not claim that Ingalls agreed in writing to litigate in Michigan.

Or, a corporation may waive jurisdiction by failing to raise a jurisdictional objection in its first responsive pleading or motion.  MCR 2.116(D)(1).  Although Ingalls served the completed garnishee disclosures and interrogatories on St. Mary's in the garnishment proceedings, the Michigan Court Rules explicitly state that such filings do not waive a garnishee's right to object to jurisdiction.    MCR  3.101(L)(4)  ("The  filing  of  a  disclosure,  the  filing  of  answers  to

---

[3] It is also undisputed that MCL § 600.711 is the applicable law governing personal jurisdiction over Ingalls and that Ingalls is a "corporation" within the meaning of this section.

interrogatories, or the personal appearance by or on behalf of the garnishee at a deposition does not waive the garnishee's right to question the court's jurisdiction, the validity of the proceeding, or the plaintiff's right to judgment.").

As to continuous-and-systematic business within the state, Michigan courts look for indicia that a corporation's "affiliations with the State . . . render them essentially at home in the forum State," such as when "the particular corporate entity has a physical location, officers, employees, or bank accounts in Michigan." *Glenn v. TPI Petroleum, Inc.*, 854 N.W.2d 509, 515 (Mich. Ct. App. 2014) (internal citations omitted) (collecting cases).

Velo/Renner do not challenge the district court's factual finding that, at the time of filing the Garnishment Request, they had "no reason to believe that any further investigation or discovery might support" that Ingalls had either consented to Michigan's jurisdiction or that it had a continuous-and-systematic business relationship with the state. R. 51, PID 234. Instead, Velo/Renner argue that the FDCPA does not require debt collectors to know with absolute certainty at the time of filing that there are jurisdictional grounds for a garnishment request. But the district court never required absolute certainty. Rather, it required a reasonable belief that jurisdiction was supported, or some actions calculated to make that determination. Velo/Renner cite three cases in support of their position that the district court required too much: *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889 (6th Cir. 2020); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324 (6th Cir. 2006); and *Lee v. Javitch, Block & Rathbone LLP*, 601 F.3d 654, 658 (6th Cir. 2010).

*Van Hoven* involved a debt-collection company that, when filing garnishment requests with a Michigan-state court clerk, made two allegedly "false, deceptive, or misleading representations" under Michigan law: "(1) they sought the costs of each garnishment request under Michigan law,

and (2) they sought the costs of prior failed garnishments under Michigan law." 947 F.3d at 893. In concluding that the second statement was an actionable misrepresentation but the first was not, we clarified that there are two requirements for a claimed violation or false representation of state law to constitute a violation of the FDCPA: first, the "claim must turn on a *material* misstatement," and second, the representation must be false "at the time the creditor makes it." *Id.* at 894. After clarifying that the Act's definition of "'false' material statements . . . does not [] extend[] to every representation about the meaning of state law later disproved," we gave several examples of what may and may not constitute false representations. "[M]isquoting a case, relying on a statute no longer in existence, [] invoking an overruled decision," "claim[ing] that a one-year statute of limitations runs for two years," and "say[ing] today that the Act does not apply to attorneys collecting debts" would all be "false when made, and it does not matter whether the lawyer knows they are false" because "[i]gnorance of the law is not a defense." *Id.* at 895. In contrast, it would *not* be a false representation for a lawyer to "acknowledge[, whether in a debt collection action or a legal brief,] that state law was unclear about whether the creditor could obtain a certain cost" and then to seek the cost after "explain[ing] that its best reading of the law allowed the cost." *Id.* Analogizing to Rule 11 of the Federal Rule of Civil Procedure's authorization of sanctions when attorneys advance "'legal contentions' that are not 'warranted by existing law,'" we ultimately held that a material misrepresentation of state law is only actionable under the FDCPA when it is "objectively baseless" at the time it was made, making the misrepresentation "legally indefensible." *Id.* at 895–96 (quoting Fed. R. Civ. P. 11(b)). Applying this analysis to the *Van Hoven* facts, we held that the debt collectors had not made "objectively baseless" requests for the costs of each new garnishment because the requests were "reasonable [] under," and "reflected the better reading of," Michigan law at the time. *Id.* at 897. However, the requests for the costs of

prior garnishments were false representations because "[a]t the time of this lawsuit, the [Michigan Court] Rules made clear that creditors were not entitled to recover" those costs. *Id.* at 899 (internal citation omitted).

*Harvey* involved a debtor who alleged that a debt collector violated the FDCPA by filing "a lawsuit to collect a purported debt without the means of proving the existence of the debt, the amount of the debt, or that [the debt collector] owned the debt." 453 F.3d at 326. In concluding that Harvey's complaint had failed to sufficiently allege that the debt collector's filing was a deceptive practice under the FDCPA, we reasoned that the debt collectors

> did not implicitly represent by filing the Complaint for Money that they had in hand the means to prove [their] claims. Rule 11 of the Federal Rules of Civil Procedure does not require attorneys to ensure that their client can prove its case before filing. Instead, the Rule mandates only that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(B)(3). *[The plaintiff] did not allege in her complaint that Seneca and Javitch failed to undertake a reasonable investigation into whether or not Harvey's debt existed*; rather, she essentially focused on the contention that [the debt collectors] did not presently possess the means of proving that debt.

*Id.* at 333 (emphasis added).

Finally, *Javitch* involved a debtor who alleged that an attorney violated the FDCPA by filing an affidavit for non-wage garnishment of the debtor's bank account when, after garnishment, "the court later returned the money after [the debtor] proved that the account contained only" funds exempt from garnishment. 601 F.3d at 655. We concluded that the attorney had not violated the FDCPA because the signed affidavit stated only that the attorney had a "reasonable basis to believe" that the bank account contained garnishable wages, and that the attorney's belief was indeed reasonable under the relevant standard imposed by Ohio law. *Id.* at 658.

The parties disagree on the significance of these cases, as they did before the district court. The district court concluded that *Van Hoven* governs this case and that Velo/Renner's

representation of jurisdiction was "objectively baseless"—and therefore violated the FDCPA—because Velo/Renner "filed the garnishment without ever being able to show that the Court had jurisdiction over the Illinois corporation." R. 51, PID 233–34 (noting that Velo/Renner had, at the time of the court's ruling, still failed to proffer a "reason to believe that any further investigation or discovery might support" jurisdiction for their Garnishment Request).

On appeal, Velo/Renner respond only partially to the district court's analysis. In Velo/Renner's view, *Van Hoven*/*Harvey*/*Javitch* support their position because the issue of jurisdiction—specifically, the issue of consent to jurisdiction—was an "open question" at the time of filing, and their later-rejected assertion of jurisdiction was, at most, a reasonable and debatable mistake of law. Specifically, Velo/Renner argue that the question whether Ingalls might have had ongoing business with Michigan or might consent to jurisdiction in the future was

> necessarily [a] fact-specific [inquiry that would] require discovery, which is ordinarily not available to a party until after a complaint, or, in this instance, a garnishment, has been filed. . . . At the end of the day, judgment creditors and their counsel should not be required to meet additional filing requirements not found in Michigan law to avoid running afoul of the FDCPA.

Appellants' Br. at 20–21 (internal citations omitted).

Thompson responds by reiterating the district court's conclusion that Velo/Renner's representation as to jurisdiction violated the FDCPA under *Van Hoven* because it "was baseless when it was made and [Velo/Renner] had no reason to believe that jurisdiction would later arise." Appellee's Br. at 14–15. Thompson similarly argues that *Harvey* and *Javitch* are distinguishable. Unlike in *Harvey*—where the court found no FDCPA violation because the plaintiff did not "allege in her complaint that [the debt collectors] failed to undertake a reasonable investigation into whether or not [the debtor]'s debt existed"—Velo/Renner "filed the garnishment without ever being able to show that the court had jurisdiction and without any basis to believe that any further

investigation would support jurisdiction in the Michigan court."[4]  *Id.* at 15; *Harvey*, 453 F.3d at 333.  And unlike in *Javitch*—where we found that the attorney had a "reasonable basis" to believe that there were garnishable funds in the debtor's account—Velo/Renner "had no reasonable basis to believe that the Michigan court had jurisdiction."  Appellee's Br. at 16 (citing 601 F.3d at 657).

Finally, Thompson argues that Velo/Renner's actions are analogous to those in *Currier*, *Stratton*, and a line of cases holding that debt collectors violate the FDCPA when they file a time-barred lawsuit.  *Id.* at 9–11.  As previously discussed, *Currier* held that filing a judgment lien against a debtor's home that was invalid under Kentucky law can "fairly be characterized as a threat to take an action that cannot legally be taken."  762 F.3d at 535–36.  *Stratton* held that a debt collector violated the FDCPA by misrepresenting, in a complaint filed to recover the debt, the amount owed as interest under Kentucky law.  770 F.3d at 451 (noting that the misstatement was a "threat . . . to take an action that cannot legally be taken" because it "falsely represent[ed] both the 'character' and 'amount' of [the] debt" such that "[a]n unsophisticated consumer would most certainly have been misled").  As to the time-barred cases, the Sixth Circuit has not explicitly held that suing on a time-barred debt violates the FDCPA.  However, the *Van Hoven* court noted in its discussion that doing so would be "objectively baseless, and is unsurprisingly subject to liability in many circuits."  947 F.3d at 896; *see also Harvey*, 453 F.3d at 332–33 (approvingly quoting a district court's explanation that time-barred-debt collection is impermissible under the FDCPA because it "play[s] upon and benefit[s] from the probability of creating a deception.  Honest disclosure of the legal unenforceability of the collection action due to the time lapse since the debt was incurred would [] foil[] . . . efforts to collect on the debt.  So instead, the [debt

---

[4] Conversely, we suggested in *Harvey* that there could have been an FDCPA violation if the debt collectors had "filed the complaint without the means of ever being able to obtain sufficient proof of the debt-collection action."  *See* 453 F.3d at 328.

collector] implicitly misrepresent[s] the status of the debt, and thereby misle[ads a debtor] as to the viability of legal action to collect.") (internal citation omitted).

Thompson argues that Velo/Renner's Garnishment Request is analogous to *Currier, Stratton*, and these time-barred-lawsuit cases because it relied on a deception that the Request was valid when filed, and "in hopes that the garnishee and the consumer [Thompson] would unwittingly acquiesce and honor the garnishment without objection." Appellee's Br. at 11. Thompson also correctly points out that this unwitting acquiescence was precisely Velo/Renner's position in state court, when they failed to argue that they plausibly alleged jurisdiction at the time of filing and instead argued that "Ingalls' [responses to the Garnishment Request] could constitute consent" to jurisdiction under Michigan law. R. 36-6, PID 124.

**b.**

We agree with the district court that *Van Hoven* establishes when violations of state law rise to "actionable" false representations under the FDCPA. Under *Van Hoven*, Thompson must first demonstrate that the alleged misrepresentation was a "material" misstatement. 947 F.3d at 894. Second, she must demonstrate that the representation was false "at the time the creditor ma[de] it." *Id.*

Neither party disputes that a misrepresentation regarding jurisdiction is "material" to this action. *See id*. Thus, the key question is whether Velo/Renner's representation regarding jurisdiction was false "at the time the creditor ma[de] it," rendering the representation "objectively baseless" and "legally indefensible." *Id.* at 895–96.

The district court determined that at the time Velo/Renner filed the Garnishment Request, they had no basis for believing that Michigan had jurisdiction under either the consent prong of the statute or the continuous-and-systematic-part-of-its-general-business prong. *See* MCL

§ 600.711. Nothing in the record suggests a willingness on the part of Ingalls to consent to jurisdiction. Both the state court and the district court concluded that Velo/Renner had introduced no evidence to support jurisdiction under either prong, and the district court observed that, as of the date of the summary-judgment hearing, Velo/Renner "still" had offered "no reason to believe that any further investigation or discovery might support a Michigan court's jurisdiction over the Illinois hospital." R. 36-6, PID 125–26; R. 51, PID 233–34. On appeal, Velo/Renner argue that consent and continuous-and-systematic-business jurisdiction both involve fact-specific inquiries and information inaccessible to them until discovery, which would necessitate waiting until after the Garnishment Request has been filed in order to substantiate the suit. But as highlighted by the cases discussed above, debt collectors still need to have some reasonable basis for believing that their suit is viable at the time of filing; a Garnishment Request cannot be an unsupportable shot in the dark. *Van Hoven*, 942 F.3d at 896 (noting that while "a lawyer does not 'misrepresent' the law by advancing a reasonable legal position later proved wrong," contentions that are "objectively baseless" will violate the Act); *Harvey*, 453 F.3d at 333 (suggesting that a debt collector would violate the FDCPA by "fail[ing] to undertake a reasonable investigation into whether or not [the] debt existed" prior to filing).

Velo/Renner offered no evidence in the state and federal actions that they conducted any "reasonable investigation" or otherwise had any reasonable basis to believe that the Michigan court had jurisdiction when they filed the Garnishment Request. In addition to conducting their own internal inquiry into Ingalls's business activities before filing, Velo/Renner could have reached out to Ingalls itself to make a reasonable inquiry into its business contacts with Michigan or its

willingness to consent to Michigan's jurisdiction for garnishment purposes.[5] Because Velo/Renner provided no evidence to support a reasonable belief that there was jurisdiction when they filed their Garnishment Request, we conclude that Velo/Renner made a representation about Michigan state law that was false "at the time the creditor ma[de] it." 947 F.3d at 895–96.

Nor may Velo/Renner rely on the bare hope that, after filing a garnishment request without reasonable basis for jurisdiction, Ingalls might subsequently consent to jurisdiction or waive its right to contest it. To be sure, Michigan's corporate personal jurisdiction statute theoretically allows a corporation to consent to jurisdiction after a lawsuit against it has been filed. MCL § 600.711 (allowing corporations to consent to jurisdiction "to the extent authorized by the consent"). But Velo/Renner produced nothing to support that there was a reasonable possibility that Ingalls would do so, or that they reasonably believed that it would. For example, Velo/Renner

---

[5] Velo/Renner argue that mandating these additional inquiries would be tantamount to a "require[ment] to meet additional filing requirements not found in Michigan law to avoid running afoul of the FDCPA." Appellant's Br. at 21. But as discussed, Michigan's signature requirements already impose a duty of "reasonable inquiry" before filing a lawsuit. MCR 1.109(E)(5). And, in any event, the FDCPA may impose requirements not found in state law.

Velo/Renner also suggest that bringing this FDCPA lawsuit was improper given the existence of "[v]arious mechanisms already exist[ing] under the Michigan Court Rules to sanction allegations of improper court practice as alleged in this case." Appellant's Br. at 15–16 (citing MCR 1.109(E)(6) (which imposes sanctions for violating Michigan filing standards) and MCR 2.625(A)(2) (which awards costs against filers of frivolous actions)). Velo/Renner argue that "asking the District Court to mete out sanctions for litigation conduct undertaken in a state court is improper, especially because the state court is in the best position to determine whether an attorney's conduct runs afoul of the court's rules." *Id.* at 17.

We disagree. The state court rules identified by Velo/Renner remedy improper procedural practices generally, and Thompson would have been within her rights to seek these remedies from the 61st District. The federal FDCPA lawsuit serves a different purpose: it does not remedy "allegations of improper court practice," as Velo/Renner suggest, but allegations of predatory debt collection. *See Stratton*, 770 F.3d at 449 ("Strict liability [in FDCPA actions] places the risk of penalties on the debt collector that engages in activities which are not entirely lawful, rather than exposing consumers to unlawful debt-collector behavior without a possibility for relief. By allowing a prevailing plaintiff to recover [damages], Congress further placed the cost of enforcing the FDCPA squarely on the group that could most easily ensure that the Act is not violated—the debt collectors themselves.").

submitted no affidavits supporting any expectations grounded in past experiences with out-of-state garnishments.

The FDCPA is "extraordinarily broad," *Currier*, 762 F.3d at 533 (quoting *Frey*, 970 at 1521), and we must view potential violations "through the eyes of the least sophisticated consumer." *Id.* at 533; 15 U.S.C. § 1692(e) (declaring that the Act's purpose is to "*eliminate* abusive debt collection practices by debt collectors") (emphasis added). We are persuaded by Thompson's analogy of Velo/Renner's conduct in this case to a debt collector's deceptive practice of filing a time-barred lawsuit—which could theoretically be valid if the debtor consents to suit or fails to assert the statute-of-limitations defense—operating under the assumption or hope that the debtor will unwittingly consent. Indeed, this appears to be exactly what Velo/Renner were hoping for—or at least the advantage they attempted to take—in the underlying state case when they argued that Ingalls's responses to the Writ constituted consent to jurisdiction. Further, it is important to recognize that Thompson could have been prompted to pay the debt after receiving notice of the jurisdictionless Writ (instead of objecting as she did).

In short, because Velo/Renner provided the district court with no support for a reasonable belief that there was jurisdiction over Ingalls, or that Ingalls would consent to jurisdiction, there was no error in the district court's conclusion that Velo/Renner's Garnishment Request violated the FDCPA.[6]

---

[6] This is not to say that to avoid FDCPA liability a debt collector in Michigan must necessarily establish personal jurisdiction over a debtor's out-of-state employer before seeking garnishment through that employer. We take no position on a case, for instance, unlike this one, in which there is some minimal basis identified by the creditor for assuming Michigan contacts or for anticipating consent.

**C.**

Velo/Renner next argue that the district court abused its discretion in awarding Thompson damages under the FDCPA.

The FDCPA authorizes district courts to award three different types of damages: actual damages, statutory damages, and attorney fees and costs. The statute provides in relevant part:

(a) Amount of Damages—Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2)

    (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

    (B) [language addressing class actions] and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. . . .

(b) Factors Considered by Court—In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors—

(1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional.

15 U.S.C. § 1692k.

Velo/Renner challenge the award of actual and statutory damages, arguing that Thompson failed to substantiate her request for actual damages; that the district court abused its discretion in awarding her damages anyway; and that the district court failed to appropriately consider certain damages factors under § 1692k(b)(1).

**1.**

If a district court finds a violation of the FDCPA, the court may award "any actual damage sustained by [a prevailing party] as a result of [the FDCPA violation]." § 1692k(a). We review the district court's award of these damages for abuse of discretion. *See Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 446 (6th Cir. 2009). A district court abuses its discretion when it "relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard. Conversely, the district court's [damages] calculations receive substantial deference where the court provides a clear and concise explanation of its reasons." *Id.* (internal citations omitted).

In awarding Thompson actual damages based on her costs and attorney fees "incurred in defending [the] underlying [state-court] collection action," the district court considered the following documents: an "invoice" dated January 14, 2021, which listed a total of 9 hours expended, plus a $20.00 court filing fee; Thompson's counsel's time records for the underlying garnishment proceeding, which she indicated were made from "data entered contemporaneously and [that] were previously invoiced on May 29, 2019 and October 2, 2019"; and the retainer agreement pertaining to the state-court proceeding which set forth a $300 hourly rate. R. 47, PID 198–99. Based on these documents, the district court concluded that Thompson had "proven these damages to a reasonable certainty and [the court] will therefore award her actual damages of $2,720.00." *Id.* at 199.

On appeal, Velo/Renner argue that "Thompson did not adequately plead or present credible evidence to support her request for actual damages in the amount of $2,720." Appellants' Br. at 23. Specifically, Velo/Renner argue that Thompson's January 14, 2021 invoice was unauthenticated and that Thompson's other evidence does not demonstrate "that Thompson

actually paid any out of pocket attorney's fees or costs to challenge the garnishment, or remains obligated to do so." Appellants' Br. at 24.

Velo/Renner made these same arguments to the district court, which acknowledged and rejected them, holding that although Thompson's "proofs in this regard are thin," R. 47, PID 198–99, she had proved them to a reasonable certainty.

A district court's determination regarding the amount of damages is a question of fact that may be reversed only if the court's findings are clearly erroneous. Fed. R. Civ. P. 52(a)(6); *Neyer v. United States*, 845 F.2d 641, 644 (6th Cir. 1988) (a factual determination is "clearly erroneous" where "the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed"). The district court's calculation of actual damages in this case was not clearly erroneous, as the proofs showed that the amount of loss was $2,720.00: $2,700 for state counsel's nine hours of work at $300 per hour, plus $20 for the court filing fee. And, contrary to Velo/Renner's suggestion that Thompson did not provide "any evidence that [she] actually paid any out of pocket attorney's fees or costs to challenge the garnishment, or remains obligated to do so," Appellants' Br. at 24, Thompson provided a copy of her April 12, 2019 retainer agreement with her signature dated April 14, 2019. The retainer agreement stated that Thompson "agrees to reimburse and hold attorney harmless for all costs, disbursements, and expenses incurred in handling client's case," that Thompson would "pay for services rendered," and that upon receipt of "monthly . . . statements of attorney fees and costs" the payment would be "due within 15 days." R. 46-1, PID 185.

In light of this evidence that Thompson incurred actual expenses in her garnishment action that she is obligated to pay, the district court did not abuse its discretion in awarding them to her.[7]

**2.**

Velo/Renner next argue that the district court erred in awarding Thompson statutory damages because she failed to offer "admissible" evidence in support of them. Appellants' Br. at 24–25. Specifically, Velo/Renner argue that Thompson failed to offer evidence of "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance[,] and the extent to which such noncompliance was intentional," and that this failure rendered the district court unable to substantiate its award of statutory damages. *Id.* (citing 15 U.S.C. § 1692k(b)(1)).

The FDCPA authorizes district courts to award "such additional damages as the court may allow, but not exceeding $1,000." § 1692k(a)(2)(A). The district court provided the following analysis in awarding Thompson $500 in statutory damages under this section:

> [Velo/Renner] argue that "[a]s with [Thompson]'s actual damages claim, [Thompson] has offered no admissible evidence to inform the Court's determination of statutory damages, if any." (ECF No. 45 at PageID.173).
>
> The statute instructs that "in determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors—(1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional. . . ." 15 U.S.C. § 1692k(b). The Court determines that [Thompson] has not substantiated a claim for statutory damages in the maximum amount allowed under the FDCPA. However, the Court will award [Thompson] $500 in statutory damages for the FDCPA violation proved in this case.

R. 47, PID 200.

---

[7] Thompson makes an additional argument on appeal that she suffered reputational, in addition to monetary, loss as a result of the garnishment action. But she did not make this argument in district court and, therefore, it is forfeited. *Frazier v. Jenkins*, 770 F.3d 485, 497 (6th Cir. 2014).

The district court did not abuse its discretion in awarding $500 in statutory damages. First, Thompson need not provide proof of actual damages in order to receive an award of statutory damages. *Stratton*, 770 F.3d at 448–49 ("The FDCPA is a strict-liability statute: A plaintiff does not need to prove knowledge or intent, and does not have to have suffered actual damages [to bring a successful case].") (internal citations omitted); *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 706 (6th Cir. 2009) ("Any actual damages sustained by a consumer as a result of a failure to comply with the Fair Debt Collection Protection Act are available as an *alternative* to the recovery of statutory damages, suggesting that such damages are not a necessary precondition to suit.") (internal citations omitted).

Additionally, the district court's opinion demonstrates that it considered the statutory requirements—the frequency, persistence, nature, and intentionality of Velo/Renner's noncompliance with the FDCPA—even though it did not offer in-depth reasoning as to its decision, and its decision to award $500, rather than $1,000, for the single "violation proved in this case" comports with the Sixth Circuit's guidance about how such factors should be considered. *See, e.g.*, *Wright v. Finance Serv. of Norwalk, Inc.*, 22 F.3d 647, 651 (6th Cir. 1994) ("The provision requiring courts to consider 'frequency and persistence of noncompliance' in 'any action' suggests that Congress envisioned situations . . . where repeated violations are the subject of a single proceeding. . . . Where multiple [FDCPA] violations occur, Congress intended the courts to award close to the full $1,000. Conversely, in less egregious situations, the court can award less."). We find no error here.[8]

---

[8] Though Velo/Renner mention attorney fees as an issue presented upon appeal, they do not actually contest the award of attorney fees in their brief and instead focus only on the award of actual and statutory damages. Because Velo/Renner do not develop an attorney-fee argument, it is waived. *Spirko v. Mitchell*, 368 F.3d 603, 612 (6th Cir. 2004) ("It is a settled appellate rule that issues adverted to in a perfunctory

**III.**

We AFFIRM the district court for the reasons set forth above.

---

manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal citation omitted).

**ALICE M. BATCHELDER, Circuit Judge, dissenting.** Under today's holding, a debt collector in Michigan must establish personal jurisdiction over a debtor's out-of-state employer *before* seeking garnishment through that employer—failure to do so violates the FDCPA. I cannot join this view of personal jurisdiction, garnishment, or the FDCPA.

**I.**

Nicole Thompson had a $745.76 bill for medical services that was long past due to St. Mary's Hospital in Grand Rapids, Michigan. Eventually, St. Mary's obtained a default judgment from a Michigan State Court, but Thompson still would not pay her bill. By the time St. Mary's sought to garnish her wages, the amount due was $1,149.70, including interest and costs. Thompson lives in Illinois and works for Ingalls Memorial Hospital in Chicago, Illinois.

St. Mary's hired attorney Scott Renner, who requested a writ of garnishment from the Michigan District Court that had entered the default judgment. *See* Mich. Ct. Rule 3.101(D) ("The clerk of the court that entered the judgment shall review the [garnishment] request."). Renner named Ingalls Hospital as the garnishee. The Michigan Clerk of Court granted the writ and Renner served garnishment forms to Ingalls Hospital, *see* Rule 3.101(F)(1), including a "Garnishee Disclosure" form created by the Michigan State Court Administrative Office, *see* Rule 3.101(C). On whole, Renner complied with Michigan's garnishment rules, using the prescribed State-created forms, which he completed fully, accurately, and honestly. This is not in dispute.

Upon receipt of the forms, and in accordance with the instructions, Ingalls Hospital mailed a disclosure to Thompson, alerting her to the pending garnishment. Before Ingalls Hospital (garnishee) withheld any money from Thompson or transmitted any money to St. Mary's Hospital, Thompson filed an objection, claiming the Michigan Court did not have jurisdiction over Ingalls Hospital because Ingalls Hospital had no presence or contacts in the State of Michigan.

The Michigan District Court found that it did not have personal jurisdiction over Ingalls Hospital and released the garnishment. Renner appealed to the Michigan Circuit Court, arguing that Ingalls Hospital consented to personal jurisdiction by complying with the writ. The Michigan Circuit Court recognized that consent is a valid means of establishing personal jurisdiction, M.C.L. § 600.711(2), but that a garnishee does not consent to personal jurisdiction merely by filing the required forms, Mich. Ct. Rule 3.101(L)(4). The court explained: "Without more—such as a formal written consent or some other affirmative actions by Ingalls [Hospital]—the court cannot find that Ingalls [Hospital] consented to the district court's jurisdiction." The court did not opine as to what "other affirmative actions" would establish consent. The circuit court concluded that the district court did not abuse its discretion by releasing the garnishment.

Up to this point, everything was correct: Renner requested the garnishment; the Michigan Clerk of Court issued the writ; Renner served the garnishee, Ingalls Hospital; Ingalls Hospital notified Thompson; Thompson objected in the Michigan Court, contesting personal jurisdiction; the Michigan Court analyzed the claim, agreed, and released the garnishment; Renner appealed; and the reviewing Michigan Court affirmed, ending the proceeding.

## II.

Thompson sued Renner in federal court, claiming that Renner violated the FDCPA by seeking the garnishment without first conclusively establishing personal jurisdiction over the garnishee, Ingalls Hospital. Specifically, Thompson claimed that Renner was "not legally entitled to file a garnishment against Ingalls Memorial Hospital in the Michigan court because the Michigan court did not have [personal] jurisdiction over Ingalls Memorial Hospital," so that garnishment action constituted a "threat to take an[] action that cannot legally be taken" under 15 U.S.C. § 1692e, and "was unconscionable and unfair" under § 1692f. Thompson moved for

-27-

summary judgment, claiming that, at the time he filed for the writ in the Michigan Court, the possibility existed that he could establish personal jurisdiction. He argued that he did not have to be correct, he merely needed a reasonable belief that he could establish personal jurisdiction, so it should not be determinative that, in the end, he had not established personal jurisdiction.

The district court disagreed with Renner and held that his claim that Ingalls Hospital could "consent or waive jurisdiction is a deceptive practice" and "a[n] 'objectively baseless' legal contention." I find this ruling preposterous. It is not unreasonable for a plaintiff's attorney to suspect or even anticipate that an out-of-state corporation might consent to personal jurisdiction. On the contrary, it is so reasonable that the Michigan legislature specifically included such consent in its statute as one means of establishing personal jurisdiction over an out-of-state corporation. *See* M.C.L. § 600.711(2); *see also Witbeck v. Bill Cody's Ranch Inn*, 411 N.W.2d 439, 442 (Mich. 1987) (holding that "general personal jurisdiction over a corporate defendant is authorized by statute if the corporation consents thereto"). Nor is it unreasonable for a plaintiff's attorney to proceed with a legal action without obtaining such consent beforehand, given that "a party may stipulate to, waive, or implicitly consent to personal jurisdiction." *See Michigan v. Lown*, 794 N.W.2d 9, 23 (Mich. 2011) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985) ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court." (quotation marks and citations omitted))). In fact, Michigan's garnishment rules include an express provision that a garnishee does not waive personal jurisdiction merely by filing the prescribed forms, answering interrogatories, or appearing at a deposition. *See* Mich. Ct. Rule 3.101(L)(4). The clear implication of this provision is that a garnishee can waive a challenge to personal jurisdiction through actions other than those three expressly articulated actions—as the

Michigan Circuit Court indicated in its jurisdictional ruling. More importantly, the very inclusion of this provision in the garnishment rules demonstrates that it is not unreasonable for a plaintiff's attorney to expect a garnishee might waive such a challenge to jurisdiction.

Corporate defendants routinely consent to out-of-state jurisdiction, either intentionally or unintentionally, thus creating an entire doctrine of law about waiver and implied consent to personal jurisdiction. *See*, *e.g.*, *Burger King*, 471 U.S. at 473; *Lown*, 794 N.W.2d at 23. And certain case-specific facts also tilt in Renner's favor. It is undisputed that Ingalls *Hospital* received the forms (Writ of Garnishment and Garnishee Disclosure) that identified "St. Mary's *Hospital*" as the plaintiff seeking payment. It is perhaps too much to assume that Ingalls Hospital has its own troubles with deadbeats and past due bills, which might motivate it to cooperate with St. Mary's Hospital's attempts to recoup payment, but neither would it be wholly unreasonable if that were Ingalls Hospital's view. More to the point, by all appearances, Ingalls Hospital initially acted to comply with the garnishment and only stopped when Thompson objected. And Ingalls Hospital did not actively challenge jurisdiction: it did not file any motion to dispute jurisdiction, it did not endorse or support Thompson's jurisdictional challenge, and it did not appear at the hearing before the Michigan district judge concerning that challenge. Those facts, considered in the light most favorable to Renner, could suggest a willingness to consent to jurisdiction.

## III.

Looking at this another way, the district court created a construct in which a debtor's successful challenge to the court's personal jurisdiction over the third-party garnishee transforms an otherwise valid collection action into an FDCPA violation. This is absurd.

"The goal of the FDCPA is to eliminate abusive debt collection practices," *Lyshe v. Levy*, 854 F.3d 855, 859 (6th Cir. 2017), including "false, deceptive, or misleading representation or

means," 15 U.S.C. § 1692e, or "unfair or unconscionable means," § 1692f, in collecting or attempting to collect any debt. "[A] debt collector's actions are false, deceptive, or misleading under § 1692e" when, "in addition to being technically false," the action (or statement) is "material," meaning that it "would tend to mislead or confuse the reasonable unsophisticated consumer." *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012). "[W]e are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." *White v. Universal Fid.*, LP, 793 F. App'x 389, 397 (6th Cir. 2019) (White, J., concurring) (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010)).

"The FDCPA does not define an 'unfair or unconscionable' practice under § 1692f," but we have held it to "include[] the collection of any amount not expressly authorized . . . by law." *Currier v. First Resol. Inv. Corp.*, 762 F.3d 529, 534 (6th Cir. 2014) (citations omitted). "Unfair practices and deceptive practices are prohibited under separate" provisions, so "a collection practice could be unfair without necessarily being deceptive." *Id*. (citations omitted). In applying § 1692f, we have asked whether "the least sophisticated consumer" would regard the action "as an unfair or unconscionable means to collect or attempt to collect the debt." *Id*. at 535.

In light of this legal standard, a few basic, indisputable facts warrant recognition. Garnishment is a legitimate means of collecting a debt. Michigan has rules for garnishment and Renner followed them to the letter. Michigan has prescribed forms for garnishment and Renner used them. Neither the garnishment rules nor the forms require (or even provide for) the requester to make any affirmative representation about the court's personal jurisdiction over the garnishee. Renner did not make any false or misleading statements; he did not make any threats or anything that could be construed as a threat; he did not communicate with Thompson at all.

Renner merely filed a request for garnishment, naming Ingalls Hospital as the garnishee. There was nothing false, deceptive, misleading, unfair, or unconscionable about that. If Ingalls Hospital had consented to personal jurisdiction, the Michigan Court would have enforced the garnishment. Renner's garnishment actions were proper. The Michigan Court released the garnishment because the garnishee, Ingalls Hospital, did not consent to personal jurisdiction in an out-of-state court. It makes no sense to characterize a debt collector's actions as fair or foul based solely on the third-party garnishee's response to it. A garnishee's failure to consent to jurisdiction cannot delegitimize a debt collector's otherwise proper conduct (nor could a third party's cooperation or consent necessarily legitimize a debt collector's otherwise improper conduct).

In *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 895 (6th Cir. 2020), in which a debtor claimed that a mistake of law was a false statement, we held that: "A representation of law is not actionably false every time it turns out wrong." "[W]e do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of [that lawsuit] an action that cannot legally be taken." *Id.* (quotation marks omitted) (quoting *Heintz v. Jenkins*, 514 U.S. 291, 295-96 (1995)). Rather, "[t]he question . . . is whether the legal contention was objectively baseless at the time it was made, making it legally indefensible or groundless in law." *Id.* at 896 (quotation marks and citations omitted). Thus, it is "not a violation of the Act to file a collection lawsuit without presently possessing means to prove a debt exists, . . . because Rule 11 requires only that factual contentions are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.* (quotation marks and citations omitted).

That case is not exactly on point, but it is conceptually overwhelming. Here, Renner did everything according to the rules and procedures; he did nothing that was false, deceptive, misleading, unfair, or unconscionable; nothing that would mislead or frustrate Thompson's ability

to choose her response; nothing that would (before today) justify Rule 11 sanctions. Renner filed an action that was permissible and even appropriate. But because Thompson challenged personal jurisdiction, Renner could not establish personal jurisdiction by waiver or implied consent, and the Michigan Court dismissed the action. That is the nature of our legal system. The fact that Renner's garnishment request turned out ultimately to be unsuccessful does not, by itself, make his legitimate filing of that garnishment request an action that cannot legally be taken.

## IV.

For all of the foregoing reasons, I dissent.